IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CLIFFORD J. ZALOUDEK,

             Plaintiff,

      v.                                  Case No. 13-4128-SAC

CAROLYN W. COLVIN,
Commissioner of Social Security,

             Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security which denied plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

## I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence in the record as a whole, and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). When supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires more than

a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that he has a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents him from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that he is not only unable to perform his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U .S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is

2

on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his previous work. The claimant is determined not to be disabled unless he shows he cannot perform his previous work. The fifth step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20 (2003).

The claimant bears the burden of proof through step four of the analysis. *Nielson v. Sullivan,* 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Nielson,* 992 F.2d at 1120; *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson,* 987 F.2d at 1487.

## II. Procedural History

Plaintiff applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. His claims were denied initially and on reconsideration. On July 10, 2012, following a

hearing, the ALJ found Plaintiff was not under a "disability" as defined in the Act.[1]

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, May 22, 2010. At step two, the ALJ found the claimant has the following severe impairments: diabetic neuropathy, depression, sleep apnea, mild degenerative disc disease lumbar spine, ulnar neuropathy, and seizure disorder. At step three, the ALJ determined that those impairments were not on the list of impairments presumed severe enough to render one disabled. The ALJ then determined that the Plaintiff has the residual functional capacity (RFC) to perform light work, with the following restrictions:

> **and he can frequently perform push/pull operations with upper extremities, and frequently perform foot control operations; frequently climb ramps or stairs, but never climb ladders, ropes or scaffolds.  He can frequently balance, stoop, kneel, crouch, and occasionally crawl. He can frequently reach, handle, and finger bilaterally.  He needs to avoid concentrated exposure to extreme cold and heat, avoid all exposure to workplace hazards such as unprotected machinery, unprotected heights, with no commercial driving.  He is limited to work involving simple, routine and repetitive tasks, with only simple work-related decisions, with few if any work place changes.  He can have no interaction with the public but can be around co-workers throughout the day but only with occasional interaction with co-workers.**

Tr. p. 19. The ALJ found the Plaintiff unable to perform his past relevant work at step four, but found at step five that he was able to perform other jobs that exist in significant numbers in the national economy, such as routing clerk, folding machine operator, and sub-assembler.

---

[1] Plaintiff had previously filed an application for disability benefits with the Commissioner which was denied on May 22, 2010. That decision was not timely appealed, so plaintiff's disability status prior to that date is *res judicata*. Accordingly, the relevant period of disability for this application is May 22, 2010, through July 10, 2012.

## III. Analysis

Plaintiff's claims of error are addressed below.

### A. Step Three

Plaintiff first challenges the ALJ's conclusion at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Plaintiff argues that his depression either meets or, in combination with his other impairments, equals the requirements of Listing § 12.04 A and B for affective disorders.

Listing § 12.04, as applicable here, requires the Plaintiff to have a medically documented persistence of a depressive syndrome characterized by four or more listed symptoms, which results in at least two of the following:

> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace …

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. The ALJ found Plaintiff had moderate, but not marked, difficulties in each of these three areas, so found he did not meet the listing.

Specifically, the ALJ found:

> In activities of daily living, the claimant has moderate restriction. The claimant is able to shop but reported he lacked energy. He walks his dog. He is able to take care of himself and helps with his parents, although doing so increased his depression. He drives some.

> In social functioning, the claimant has moderate difficulties. He prefers to stay home and avoids others, even his family.

5

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant has reported loss of interest but is able to take care of himself and help with his parents. The claimant reports his medication makes it difficult for him to concentrate.

Tr. 17.

Plaintiff's primary contention is that his testimony, supported by evidence from the VAMC, shows that his restrictions and difficulties are marked, and not moderate. The Commissioner defines the term "marked" as follows:

> We use "marked" as a standard for measuring the degree of limitation, it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis.

 *See* Listing 12.00C, supra.

The ALJ's evaluation of Plaintiff's depression is supported by evidence of record, including the opinions of Darrell Snyder, Ph.D., and Lauren Cohen, Ph.D., State agency psychological consultants. Tr. 20. These doctors gave full credit to Plaintiff's allegations, but still found Plaintiff had only moderate, and not marked, difficulties in activities of daily living, social functioning, and concentration, persistence, and pace. The ALJ gave great weight to their opinions, and ALJ reasonably found Plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of any listed impairment. Tr. 16.

Plaintiff suggests that the ALJ improperly relied on the October 2010 opinion of Dr. Snyder and the March 2011 opinion of Dr. Cohen because these non-examining physicians did not review any evidence dated after their opinions were rendered. But Plaintiff has not shown any material change in the relevant medical record which would render those opinions, or either of them, stale. *See Chapo v. Astrue,* 682 F.3d 1285, 1293 (10th Cir. 2012) (opinion of agency examining consultant was "patently stale" when the relevant medical record had "material changes" after his opinion was given). Nor has Plaintiff shown that his attorney objected to those opinions based on staleness or requested a new mental examination of her client. Thus these opinions were substantial evidence upon which the ALJ was entitled to rely. *See Flaherty v. Astrue,* 515 F.3d 1067, 1071 (10th Cir. 2007).

Plaintiff also argues that the ALJ failed to address the findings of his treating providers at the VA, but this is similarly without merit. The ALJ specifically and repeatedly addressed and weighed VA records indicating that Plaintiff was under treatment for diabetes, hyperlipidemia, tobacco dependence, peripheral neuropathy, osteoarthritis, and depression. *See* Tr. 18. (referring to the medical records of Plaintiff's treating providers at the VA). *See also* Tr. 18-20 (addressing VA records 17F, 18F, 10F, 28F, 20F, 22F, 18F, and 27F).

7

Plaintiff suggests that no evidence of record supports the ALJ's finding that Plaintiff helps with his parents or takes care of himself. But the ALJ's finding was that Plaintiff *was able* to do so, and medical record supports the ALJ's finding regarding his parents in stating: "[w]orsening of symptoms were thought due to needing to move to take care of aging parents," Tr. 653, and in showing that Plaintiff spent a month with his parents. Plaintiff concedes that he can shop, drive, mow his lawn, shovel snow off his steps, walk the dog, prepare his own food, and take care of his own hygiene. Although Plaintiff expressed some difficulty in performing some of those daily activities, this court cannot reweigh such evidence.

### B. Credibility of Plaintiff's Subjective Testimony

Plaintiff argues the ALJ erred in finding his subjective complaints not fully credible regarding the extent of his symptoms. (Tr. 16-20).

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue,* 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks omitted). Nevertheless, an ALJ's adverse credibility finding "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks omitted).

The ALJ articulated the reasons why he discredited Plaintiff's subjective complaints, including the objective medical evidence, the medical opinions, Plaintiff's daily activities, and improvement with treatment. Tr. 16-20. The ALJ considered Plaintiff's ability to maintain a long-term relationship with his live-in girlfriend to be inconsistent with his claim of disabling depression. Plaintiff contends there is no legal basis for this conclusion, yet one's ability to maintain satisfactory relationships with family members is commonly recognized as a credibility factor inconsistent with one's claim of disabling depression or other mental limitations. *See e.g., Sollera v. Colvin*, 2014 WL 834495 *4 (W.D.Pa. 2014); *Turner v. Colvin*, 2013 WL 5817558, *16 (C.D.Cal. 2013).

Plaintiff also contends the ALJ found that his daily activities were inconsistent with the alleged severity of his symptoms, but did not specify any such activity in the record. To the contrary, the ALJ's decision specifies the following as inconsistent with Plaintiff's claims of disabling pain:

> He has reported neuropathy pain as much as 9 of 10 but is able to mow, shovel, walk dogs, although he said only for short periods of time. He is able to ambulate with normal gait throughout the Department of Veterans' Affairs records, and they do not indicate they have prescribed a cane. (Citations omitted.) The claimant has his insulin pump go off when walking the dogs and mowing ... but this was corrected with adjustment of his pump and diet. It nevertheless shows more activity tha[n] suggested by the claimant.

Tr. 20.

The ALJ further suggested that Plaintiff's normal gait and stance was inconsistent with the degree of his alleged neuropathic pain. Plaintiff

challenges this as an inappropriate *sua sponte* finding by the ALJ. But the record shows that Plaintiff's providers at the VA found him to be ambulatory when he visited them, did not prescribe or document Plaintiff's use of a cane, and noted his stance and gait were normal. *See e.g.*, Tr. 58-59; 1186-87, 1218-19. Plaintiff used a cane, however, at the time of his disability hearing. Whether that use was due to a change in Plaintiff's ambulatory ability over time or to other reasons is not for this Court to decide. *See Mendez v. Colvin*, 588 Fed.Appx. 776, 779 (10th Cir. 2014), citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." (internal quotation marks omitted)).

The ALJ also found Plaintiff's desire to obtain part-time work inconsistent with his claim of total disability. Plaintiff argues that this should not have negatively impacted his credibility because he never stated he could perform part-time work, never performed part-time work during the period in issue, and thought about obtaining part-time work only because he was broke. But one's stated interest in returning to work is a valid factor in the ALJ's credibility determination. *See Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013). And although Plaintiff doubted he could actually do the work, this court has no authority to reweigh his testimony, which still supports the ALJ's finding. *See Mendez v. Colvin*, 588 Fed.Appx. 776, 779

(10th Cir. 2014), citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). In citing what he contends is contrary evidence, Plaintiff is asking the court to reweigh the evidence, which it cannot do. *See Oldham v. Astrue,* 509 F.3d 1254, 1257 (10th Cir. 2007) ("We review only the sufficiency of the evidence, not its weight.").

The ALJ's findings regarding the degree of Plaintiff's pain echo the conclusions made by the evaluators and State agency medical consultants — that although Plaintiff alleged significant neuropathic pain, the degree of his alleged pain was inconsistent with the normal findings on examination. The court's review of the record convinces it that substantial evidence supports the ALJ's credibility determination and that the correct legal standards were applied. *See Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000) ("[T]he ALJ did not simply recite the general factors he considered, he also stated what specific evidence he relied on in determining that [the claimant's] allegations of disabling pain were not credible.").

### RFC — Evaluation of Medical Opinions

Plaintiff argues the ALJ's RFC was "legally and factually indefensible." *See* Pl.'s Br. At 31-32. Plaintiff contends that the RFC is not supported by substantial evidence because the ALJ did not include a "narrative discussion" describing how the evidence supports each conclusion in his RFC assessment citing to specific medical facts. Instead, the ALJ simply "adopted" the RFC

rendered by non-examining state-agency physicians who did not review the majority of the medical evidence of record.

But the ALJ need not repeat verbatim the medical source's narrative in his RFC finding or in the corresponding hypothetical to the VE. *Carver v. Colvin*, 2015 WL 307084, 3 (10th Cir. 2015). Here, the ALJ's physical RFC assessment is identical to the opinion of Dr. Stevens, the State agency medical consultant. Tr. 18, 661-67. The ALJ's decision cites the evidence relied on by Dr. Stevens to formulate the physical RFC, and states he afforded great weight to Dr. Stevens's opinion. Tr. 18-20. No redundancy is required. With regard to Plaintiff's mental RFC, the ALJ adopted the limitations opined by Dr. Snyder, Tr. 18, 655-56, that Plaintiff had moderate limitations in his ability to understand, remember, and carry out detailed instructions, Tr. 655, and the ALJ correspondingly limited Plaintiff to work involving simple, routine and repetitive tasks. Tr. 18. This is sufficient.

Plaintiff also contends that Doctors Snyder and Stevens did not review the entire case record, thus the ALJ improperly "adopted" their RFC assessments. This staleness argument has been addressed above.

Plaintiff further contends that the ALJ improperly accorded great weight to the opinions of the non-examining State agency medical and psychological consultants without discussing the evidence that entitled the opinions to great weight. *See* Pl.'s Br. at 29-31. But the ALJ's decision

sufficiently reflects a discussion of the evidence the consultants relied on in formulating their opinions.

Lastly, Plaintiff contends the ALJ failed to discuss the documented side effects which plaintiff experiences from his medications. Those side effects are stated to include grogginess, feeling like he is drunk, excessive sleep, decreased sleep, and interruption with balance. But the ALJ specifically addressed the side effect of feeling drunk. Tr. 19. As to the other alleged side effects, this argument is unavailing because although an ALJ must consider all the evidence, he "is not required to discuss every piece of evidence." *Clifton v. Chater,* 79 F.3d 1007, 1009–10 (10th Cir. 1996).

**Step Five**

Plaintiff contends the ALJ improperly found he could perform "other work" that exists in significant numbers in the national economy. Plaintiff argues that because the ALJ found that plaintiff had "moderate" limitations in concentration, persistence and/or pace, he was required to include those limitations in his hypothetical to the VE.

The ALJ's hypothetical to the VE included the moderate limitations in stating that Plaintiff is "limited to work involving simple, routine and repetitive tasks, with only simple work-related decisions, with few if any work place changes," and is to have "no interaction with the public but can be around co-workers throughout the day but only with occasional interaction with co-workers."  Tr. 18. These limitations "capture the essence"

of the functional limitations supported by the objective medical evidence and other evidence. *See Carver v. Colvin*, 2015 WL 307084, 3-4 (10th Cir. 2015). No more is required.

Plaintiff additionally contends that he does not retain the RFC to perform light work activity, and that the hypothetical posed by the ALJ was premised on his improper RFC determination. But the Court has rejected this challenge to the RFC, above. The VE's testimony thus constitutes substantial evidence on which the ALJ justifiably relied in reaching his conclusion of non-disability. *See Gay v. Sullivan,* 986 F.2d 1336, 1340–41 (10th Cir. 1993).

Having examined the specific claims of error, the Court finds sufficient evidence that a reasonable mind might accept to support the conclusion of non-disability. The standard of review "does not allow a court to displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*" *Trimmer v. Dep't of Labor*, 174 F.3d 1098, 1102 (10th Cir. 1999).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 23rd day of March, 2015, at Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge